**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:21-CR-183 (JCH) |
| | : | |
| v. | : | |
| | : | |
| LUIS CEPEDA, | : | DECEMBER 6, 2022 |
|      Defendant. | : | |
| | : | |

**RULING ON MOTION TO SUPPRESS EVIDENCE (DOC. NO. 238)**

**I.    INTRODUCTION**

Defendant Luis Cepeda ("Cepeda") has moved, pursuant to the Fourth

Amendment to the U.S. Constitution, to suppress evidence seized during a search of his

residence at 106 Judson Place in Bridgeport, Connecticut.  See Motion to Suppress

Evidence ("Mot. to Suppress") (Doc. No. 238).  The evidence at issue was discovered in

a shared basement—including a common room as well as a lockable bar room and

storage room—located beneath the residences known as 106 and 108 Judson Place.

Id.  Cepeda argues that the search of the basement rooms exceeded the scope of the

warrant, and that the evidence obtained in those areas must be suppressed.  See

Memorandum in Support of Motion to Suppress ("Def.'s Mem.") at 1 (Doc. No. 238–1);

Defendant's Reply in Support of Motion to Dismiss (Def.'s Reply") at 1 (Doc. No. 264).

The government opposes the Motion.  See Government's Memorandum in Opposition

to Defendant's Motion to Suppress ("Mem. in Opp.") (Doc. No. 259).  For the following

reasons, Cepeda's Motion is **denied**.

## II.    BACKGROUND

Starting in or around November 2020, the Connecticut State Police's Statewide Narcotics Task Force began investigating an alleged drug trafficking organization.  See, e.g., Mem. in Opp. at 1.  Nearly a year later, investigators obtained a warrant authorizing search of Cepeda's residence at 106 Judson Place in Bridgeport, Connecticut.  See id. at 2; Def.'s Mem. at 2; Government's Exhibit B, Search and Seizure Warrant ("Search Warrant") at 33–34 (Doc. No. 259).  Cepeda's home is part of a three-story multi-family house, which has two front doors to provide entry to the building's two units: 106 and 108 Judson Place.  See Mem. in Opp. at 2; Def.'s Mem. at 2; Search Warrant at 34.  The two units share a basement, which consists of a common area, a lockable storage room, and a lockable bar room.  See Mem. in Opp. at 2; Def.'s Mem. at 5; November 29, 2022 Status Conference ("11/29 Status Conf.") (ECF 266).  The basement is accessible from the outside of the house as well as from a shared stairwell inside the building.  See Mem. in Opp. at 2; 11/29 Status Conf.  The lockable storage room in the basement is unmarked.  See Mem. in Opp. at 2; Def.'s Mem. at 5.  Cepeda does not possess a key for or a right to access the lockable storage room or bar room.  See 11/29 Status Conf.

Law enforcement executed the search warrant on October 26, 2019.  See Mem. in Opp. at 2; Def.'s Mem. at 2.  Excluding the contested evidence taken from the basement, investigators found $61,000 in cash, a cell phone, and title to a motorcycle as well as a Honda vehicle.  See Defendant's Exhibit A, Inventory of Property Seized ("Seizure Inventory") at 3–4 (Doc. No. 244–1); 11/29 Status Conf.  In the basement's common area, law enforcement discovered a zip lock bag with nine shotgun shells and

an Orange Kilo press.  See Def.'s Mem. at 3; 11/29 Status Conf.  Another press was

seized from the locked storage room in the basement.  See Mem. in Opp. at 2; 11/29

Status Conf.  A litany of evidence was seized from the unlocked bar room, including:

> A glass bowl with white powder residue on it; Hefty food saver bags; 187.2 grams
> of cocaine mixed in with rice in sealed plastic food saver jars; a metal kilo stamp;
> an old Modell's earning statement made out to Luis CEPEDA, 106 Judson Pl.
> Bridgeport, CT; a 'Coors Light' plastic cooler containing 20 zip lock bags, which
> themselves each contained approximately 500 grams of a white powder
> substance; a gray digital scale; three plastic jars containing approximately 35.3
> grams of lidocaine and 14.6 grams of caffeine; two sifters; and a pre-workout
> plastic jar containing 148.8 grams of lidocaine and approximately 45.8 grams of
> phenacetin.

See Def.'s Mem. at 3–4; Mem. in Opp. at 2–4; 11/29 Status Conf.

An Indictment was returned in early November 2021, charging Cepeda with one

count of conspiracy to distribute and to possess with intent to distribute cocaine.  See

Indictment ¶¶ 1–2.  The court now considers Cepeda's Motion to Suppress, see Mot. to

Suppress, which the government opposes, see Mem. in Opp.

## III.   LEGAL STANDARD

The Fourth Amendment enshrines "the right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures

. . . ."  U.S. Const., amend. IV.  "Where evidence is secured in violation of the Fourth

Amendment's protection against unreasonable searches, the evidence may be

excluded from the prosecution's case against the defendant whose Fourth Amendment

rights were violated."  United States v. Hayes, 551 F.3d 138, 143 (2d Cir. 2008).

A criminal defendant may only obtain the relief of evidence suppression for a

violation of his own Fourth Amendment rights, not a violation of the rights of anyone

else.  "Fourth Amendment rights are personal rights which, like some other

constitutional rights, may not be vicariously asserted," and "it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections."  Rakas v. Illinois, 439 U.S. 128, 133, 134 (1978); see also United States v. Padilla, 508 U.S. 77, 81 (1993) (per curiam).  "Therefore, only those who were entitled to Fourth Amendment protections in the searched area – i.e., those who had a legitimate expectation of privacy in the area – may seek exclusion of evidence seized there."  United States v. Bodnar, 2019 WL 582478, at *2 (D. Conn. Feb. 13, 2019).  Whether a person has a reasonable expectation of privacy is a two-part inquiry: (1) did the individual manifest a subjective expectation of privacy; and (2) is "society willing to recognize that expectation as reasonable?"  United States v. McKenzie, 13 F.4th 223, 232 (2d Cir. 2021) (quotation and citation omitted).

Finally, for a motion to suppress, the initial burden is on the defendant "to show that he has standing (i.e., that the police engaged in conduct that amounted to a search or seizure of the defendant's person, house, papers, or effects). . . ."  United States v. Macon, 2022 WL 4721871, at *4 (D. Conn. Oct. 3, 2022).  From there, the burden shifts to the government to prove that the "search or seizure was valid under the Fourth Amendment."  Id.

## IV.   DISCUSSION

In a Memorandum of Law filed in support of his Motion to Suppress, Cepeda argues that law enforcement exceeded the scope of the warrant by searching the shared basement of 106 and 108 Judson Place rather than simply the residence at 106 Judson Place, as the warrant indicated.  See Def.'s Mem. at 7.  The Memorandum includes an allegation that, while searching the basement, law enforcement broke into a

locked storage room that belonged to Cepeda.  Id. at 5, 7–8.  However, at a recent status conference, counsel for Cepeda—after conducting further investigation, including speaking with potential witnesses—offered relevant clarification of the defendant's position on key facts surrounding the search.  See 11/29 Status Conf.  Most notably, counsel expressed Cepeda's understanding that he does not have a key nor did he have a right to access—let alone an ownership interest in—either the lockable storage room or bar room in the basement.  See id.  In a subsequent hearing, Cepeda confirmed his counsel's representations.  December 6, 2022 Hearing (ECF 274).

Without even the right to access the rooms, Cepeda has no reasonable expectation of privacy in those spaces and lacks standing to challenge law enforcement's search therein.  See, e.g., Rakas, 439 U.S. at 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.").  Therefore, the Motion is denied with respect to the evidence found in those two rooms.

The remaining dispute concerns the evidence seized from the basement's common area, namely a zip lock bag with nine shotgun shells and an Orange Kilo press.  See Def.'s Mem. at 3; 11/29 Status Conf.  Cepeda argues that he has a reasonable expectation of privacy in that space because he resides at 106 Judson Place and has access to the basement.  See Def.'s Mem. at 6.  However, this assertion conflicts with Second Circuit precedent concerning communal spaces in multi-unit buildings.  "Our precedents establish that because an individual has no power to exclude another from a common area, a defendant has no legitimate expectation of

privacy in a 'common area [that is] accessible to the other tenants in the multi-family apartment building.'" United States v. Jones, 893 F.3d 66, 72 (2d Cir. 2018) (quoting United States v. Fields, 113 F.3d 313, 321 (2d Cir. 1997)).  This is true of "common halls and lobbies of multi-tenant buildings . . . even though they are guarded by locked doors." United States v. Holland, 755 F.2d 253, 255 (2d Cir. 1985).

Here, the basement was accessible from both the outside of the house as well as from a shared stairwell inside the building. See Mem. in Opp. at 2.  Cepeda lacked exclusive control of the space, with his landlord and co-tenants able to use the space freely.  Indeed, because Cepeda knew that there were two lockable rooms in the basement to which he did not have the right to access, he should have anticipated others would pass through the common area.  This is even more true of the lockable bar room, considering the nature and intended use of that space.  It contained a bar, at least one bar stool, and a 'Coors Light' cooler, see Def.'s Mem at 2–4, and was presumably intended for hosting social gatherings during which any number of people would have access to the common room.

Cepeda cites Sixth Circuit and Connecticut precedent in support of his view that he had a reasonable expectation of privacy in the shared basement. See Def.'s Reply at 2; United States v. King, 227 F.3d 732, 748–49 (6th Cir. 2000) (finding that a "defendant had a reasonable expectation of privacy in the basement of the two-family duplex [with no outside access] where he resided."); Connecticut v. Reddick, 207 Conn. 323, 333–34 (1988) (concluding that the defendant had a reasonable expectation of privacy in the shared basement of a two-unit building).  However, he does not cite any decisions from this Circuit supporting his position, nor does he address the circuits that

have reached differing conclusions.  See, e.g., United States v. Cruz Pagan, 537 F.2d 554, 558 (1st Cir. 1976) (finding that a person "cannot have a reasonable expectation of privacy" with regard to objects left in a basement of a multi-unit building); United States v. Sweeney, 821 F.3d 893, 902 (7th Cir. 2016) ("[W]here the basement space was 'shared by all the tenants'" of the building, "it was not objectively reasonable that the space would be assumed private."); United States v. McGrane, 746 F.2d 632, 634 (8th Cir. 1984) (determining that the tenants of a two-story, four-unit building did not have a reasonable expectation of privacy in the basement, which was a "common area . . . accessible to all tenants and the landlord").

Without a reasonable expectation of privacy in the common area of the shared basement, the court concludes that Cepeda lacks standing to challenge the search of that area.  Thus, the Motion is denied with respect to the evidence seized in the common area of the basement.

## V.    CONCLUSION

Ultimately, Cepeda lacks standing to challenge the government's search of the lockable storage room, lockable bar room, and the basement common room.  Thus, his Motion to Suppress Evidence (Doc. No. 238) is **denied**.

**SO ORDERED.**

Dated this 6th day of December, 2022, at New Haven, Connecticut.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge